IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| THERESA R. CHILCOTE, | Case No. 3:12-CV-00421-CL |
| Plaintiff, | |
| | REPORT & RECOMMENDATION |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner, Social Security<br>Administration, | |
| Defendant. | |

CLARKE, Magistrate Judge.

Plaintiff Theresa Chilcote ("Chilcote") challenges the final decision of the Social Security Commissioner ("the Commissioner") finding her not disabled and denying her application for Disability Insurance Benefits ("SSD") pursuant to the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons stated below, the court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

Page 1 – REPORT AND RECOMMENDATION

## PROCEDURAL HISTORY

Chilcote applied for SSD on March 2, 2006, alleging an onset date of August 11, 2004. Tr. 222-224.[1] The Commissioner denied Chilcote's application initially and upon reconsideration. Tr. 12. An Administrative Law Judge ("ALJ") held a hearing on June 5, 2009. Tr. 39. On August 3, 2009, the ALJ issued a decision finding Chilcote not disabled. Tr. 92. On appeal, the Appeals Council issued an order vacating the decision and remanding the case for further proceedings. Tr. 107-09. A supplemental hearing was held in front of a different ALJ on June 22, 2010. Tr. 70. At the supplemental hearing, Chilcote amended her disability onset date to December 17, 2006. Tr. 72. On July 15, 2010, the ALJ issued a decision finding Chilcote not disabled. Tr. 12-28. Chilcote's request for review was denied. Tr. 1-3. Accordingly, the ALJ's decision of July 15, 2010, became the final decision.

## FACTUAL BACKGROUND

Chilcote was born in 1956. Tr. 231. She has a GED and has attended some college courses. Tr 40. Chilcote has seventeen years of work experience as an optician. Tr. 40, 233-35. She has not been involved in substantial gainful activity since her disability onset date. Tr. 15. Chilcote alleges disability due to fibromyalgia, depression, a right elbow nerve irritation, plantar fasciitis, a sleep disorder, and hip bursitis. Pltf. Brief, p. 2.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step

---

[1] "Tr." refers to the Transcript of the Administrative Record.

two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. Id.

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication continues beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); Bowen v. Yuckert, 482 U.S. at 142; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. Id.

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into

consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g): 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Chilcote had not engaged in substantial gainful activity after the alleged onset date. Tr. 15. At step two, the ALJ found that Chilcote had the severe impairments of fibromyalgia, plantar fasciitis, and a dysthymic disorder. Id. The ALJ found that Chilcote's RFC allowed her to perform light work as defined in 20 C.F.R. § 404.1567(b), and that she is limited to understanding, remembering, and carrying out short, simple instructions as a result of pain and fatigue. Tr. 18. Accordingly, the ALJ determined that Chilcote was not able to perform any of her past relevant work. Tr. 26. At step five, the ALJ found that Chilcote is capable of performing other work existing in significant numbers in the national economy, including as an office helper or mail clerk. Tr. 26-27. The ALJ therefore found Chilcote not disabled. Tr. 27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219, 1222 (9th Cir. 2009) (*quoting* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing* Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (*citing* Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); *see also* Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; *see also* Batson, 359 F.3d at 1193.

## ANALYSIS

Chilcote claims that the ALJ erred by (1) improperly evaluating the severity of Chilcote's right elbow nerve irritation; (2) failing to credit the opinion of Chilcote's treating physician; (3) failing to give clear and convincing reasons for rejecting Chilcote's testimony; and (4) failing to give legitimate and germane reasons for rejecting the opinion of Ivan Chilcote, a lay witness.

### I.     Right elbow ulnar nerve irritation

Chilcote first contends that the ALJ erred in step two of the analysis by finding that Chilcote's right elbow ulnar nerve irritation was non-severe. The claimant has the burden of proving the existence of a severe impairment that prevented him from engaging in substantial gainful activity for at least one year. 42 U.S.C. § 423(d)(1)(A); Bowen, 482 U.S. at 146. A slight abnormality with no more than a minimal effect on an individual's ability to perform work is a non-severe impairment. *See* SSR 85-28; *see also* Yuckert v. Bowen, 841 F.3d 1273, 1289-90 (9th Cir. 1996) (adopting SSR 85-28). When determining whether an impairment is severe the ALJ must consider all of the medical evidence in a given case. 20 C.F.R. § 404.1527(c); *see also* Butler v. Astrue, 773 F.Supp.2d 975, 982 (D. Or. Feb. 24, 2011) ("[T]he ALJ is required to consider all medical opinions and assess the weight to be afforded each opinion").

Here, the ALJ's determination that Chilcote's right elbow ulnar nerve irritation is non-severe is not supported by substantial evidence in the record. The ALJ based his decision on the lack of an electromyography or nerve study showing ulnar nerve irritation; records from Michael E. Balkovich, M.D., on October 14, 2003, finding that Chilcote had a normal grip and no muscle loss; records from Emily Bier, M.D., Chilcote's treating physician, on April 9, 2004, showing that Chilcote's ulnar nerve irritation had improved over time; and records from Joshua Johnson, M.D., on January 12, 2010, finding no neuropathy, nerve entrapment, or other hand symptoms. Tr. 15-16. Though this information alone supports a finding that Chilcote's ulnar nerve irritation was non-severe, the record also contains ample evidence unaddressed by the ALJ that supports an opposite finding. For example, on May 19, 2003, Panna Shah, M.D., found a decrease in conduction velocity of the right ulnar nerve conduction across the elbow. Tr. 536. Likewise, Thomas Jay Rosenbaum, M.D., P.C., a neurosurgery specialist, stated on October 13, 2003, that Chilcote likely had an overuse condition due to work-related repetitive movements in her right arm. Tr. 398. While the treatment notes from Dr. Balkovich on October 14, 2003, state that Chilcote had a normal grip and no muscle loss, Dr. Balkovich also stated in the same notes that pressure and flexion at Chilcote's right elbow produced numbness and tingling, and concluded that Chilcote likely had ulnar nerve irritation. Tr. 401. During a consultative evaluation on June 5, 2006, Maya Rao, M.D., noted that Chilcote reported that if she bends her arm, "she gets numbness in the forearm and the medial two fingers of her hand," and diagnosed her with "[p]ossible ulnar nerve dysfunction." Tr. 573. On December 3, 2009, Dr. Bier observed a positive Tinel's sign on the right hand. Tr. 878. On June 2, 2010, Shannon Dukes, OTR/L, CHT, observed that strumming the ulnar nerve on the right elicited a positive response, and

Page 6 – REPORT AND RECOMMENDATION

noted that Chilcote had decreased hand strength for her age group. Tr. 907. These records are not discussed by the ALJ.

While the ALJ does not specifically mention the records showing Chilcote's nerve irritation was severe, the ALJ does state that Chilcote's condition improved over time. The ALJ points to Chilcote's statement to Dr. Bier on April 19, 2004, that "elbow pain is significantly improved," averaging a level one on a scale of one to ten, and Chilcote's statement from March 3, 2005, to Dr. Bier that her right elbow pain "is at least 80% improved." Tr. 16, 500, 481. These records alone are not sufficient to support the ALJ's ultimate conclusion. Indeed, the improvement in Chilcote's right elbow nerve irritation was attributed to the fact that she had recently stopped working and was no longer extending her right arm frequently. At the March 3, 2005, appointment, Dr. Bier stated that Chilcote "reports significant improvement now that she is not working," and opined that Chilcote's "symptoms are going to cause her minimal impairment as long as she is not in a job where she is working and needing to repetitively flex her elbow and forearm." Tr. 481. Dr. Bier also noted that Chilcote's elbow still caused her trouble and pain if "she is sitting for a long time or holding her arm in a flexed position at the elbow for a long period of time." Tr. 481. Finally, later records from other providers also establish that Chilcote's condition, while improved because she was not working, had not resolved: Dr. Rao noted on June 5, 2006, that Chilcote reported numbness when she bent her arm, and Shannon Dukes found that strumming the ulnar nerve on the right elicited a positive response. Tr. 571, 878, 907.

The ALJ's error is not harmless. An error is harmless if it is clear from the record that it would be inconsequential to the ultimate non-disability determination. Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ's finding that Chilcote's ulnar nerve irritation

was non-severe meant that the manipulative limitations recommended by providers were not included in Chilcote's RFC. The ALJ's RFC for Chilcote stated that she could perform light work, as defined in 20 C.F.R. § 404.1567(b), compromised by complaints of fatigue and pain. Tr. 18. The RFC provides no limitations for elbow flexion. At step five, the ALJ found that Chilcote could perform jobs as an office helper or a mail clerk. Tr. 27. These positions require frequent reaching. Dictionary of Occupational Titles (DOT), § 293.567-010 (4th ed. 1991); DOT § 209.687.026 (4th ed. 1991). Dr. Balkovich recommended on October 14, 2003, that Chilcote avoid elbow flexion. Tr. 401. Likewise, in 2009, Dr. Bier gave functional limitations that Chilcote should not reach or handle objects in her work. Tr. 793. These limitations are clearly inconsistent with being an office helper or mail clerk.

Finding that the ALJ's decision is not supported by substantial evidence, the court recommends that the case be remanded. Upon remand, the ALJ shall consider the evidence from Dr. Balkovich, Dr. Rao, Dr. Rosenbaum, and Shannon Dukes in regard to Chilcote's ulnar nerve irritation, and revise Chilcote's RFC accordingly.

## II.   Consideration of Dr. Bier's Opinion

Chilcote also assigns error to the ALJ's rejection of the opinion of Dr. Bier. Dr. Bier stated that Chilcote could not perform even sedentary work due to her Chilcote's severe limitations in her ability to handle and lift objects, her chronic fatigue, and inability to stand or walk for more than one hour per day. Tr. 564, 790-94. The ALJ disregarded Dr. Bier's opinions, arguing in part that Dr. Bier offered only symptoms in support of the diagnosis of fibromyalgia and that Chilcote was non-compliant with treatment recommendations. Tr. 20-21.

A treating physician's opinion is generally given deference because the physician "is employed to cure and has a greater opportunity to know and observe the patient as an

individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). An ALJ must provide specific and legitimate reasons to reject the contradicted opinion of a treating physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Specific, legitimate reasons for disregarding a treating or examining physician's opinion include the absence of regular medical treatment during the alleged period of disability, a lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, and conflicting medical evidence. Flaten v. Sec. of Health & Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Chilcote first argues that the ALJ improperly discounted Dr. Bier's opinions regarding Chilcote's fibromyalgia. While the ALJ found that Chilcote's fibromyalgia was a severe impairment at step two, the ALJ found that Chilcote's fibromyalgia did not equal a listed impairment and did not incorporate Dr. Bier's recommendations on Chilcote's limitations due to fibromyalgia into the RFC. The ALJ acknowledged that Dr. Bier stated that Chilcote experienced fibromyalgia, but discounted Dr. Bier's opinion, arguing that it "offers only symptoms in support of the diagnosis," and that Dr. Bier's findings were contradicted by a May 5, 2006 evaluation by Dr. Rao that found only six positive tender points, with the balance being nontender. Tr. 16.

The ALJ's finding as to Dr. Bier's credibility was not in error. Work restrictions by a treating physician may be reasonably discounted by an ALJ if the treating physician's opinion is premised on less-than-credible statements made by a claimant. Bray, 554 F.3d at 1228. As stated below, the ALJ's finding that Chilcote's report of her symptoms was not credible was proper. Dr. Bier's notes indicate that her opinion of Chilcote's fibromyalgia was based almost entirely on Chilcote's own reports. Tr. 464, 475, 477-78, 480-82, 651. Additionally, the ALJ

noted that treatment notes from other providers indicated that Chilcote's movement was not restricted. Tr. 16. During her May 2005 consultative evaluation, for example, Dr. Rao found only six tender points, and found that Chilcote presented with normal physical findings, concluding that there were no restrictions on the amount of time Chilcote could sit or stand in an eight-hour day. Tr. 574.

Chilcote also assigns error to the ALJ's finding that Dr. Bier's limitations were not credible because they did not take into account Chilcote's noncompliance with treatment recommendations. The ALJ found that Dr. Bier's limitations did not consider Chilcote's "questionable compliance with many treatment recommendations," such as the use of a sleep mask as treatment for Chilcote's sleep apnea. Tr. 21, 15. Chilcote contends that the ALJ's reliance on Chilcote's noncompliance is irrelevant, because Dr. Bier did not include Chilcote's sleep apnea as a reason why Chilcote was unable to perform sedentary work. However, Dr. Bier's limitations were based on her finding that Chilcote had chronic fatigue. Tr. 792-793. Chilcote's sleep apnea contributed to her fatigue. Tr. 866. Accordingly, the ALJ did not err in discrediting Dr. Bier's limitations based on this statement.

Based on this analysis, the court finds that the ALJ's finding that Dr. Bier's opinion of Chilcote's limitations was not credible is supported by substantial evidence in the record. The ALJ's findings as to Dr. Bier's credibility should be affirmed.

### III. Chilcote's Credibility

Chilcote also argues that the ALJ did not provide the necessary legal basis in finding Chilcote not credible. A claimant has the initial burden of producing medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). When doing so, the claimant "need

not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Once a claimant demonstrates an underlying impairment and a causal relationship between the impairment and symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Carmickle, 533 F.3d at 1160. The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284; *see also* SSR 96-7p at *3. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Smolen, 80 F.3d at 1284. The ALJ's reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (*citing* Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). Further, the ALJ "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." Lester, 81 F.3d at 834 (*citing* Bunnell, 947 F.2d at 343).

Here, the ALJ found that Chilcote met the first step of the credibility analysis: Chilcote's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 26. However, the ALJ rejected all of Chilcote's testimony concerning the intensity, persistence, and limiting effects of the symptoms that was inconsistent with his formulations of her RFC. Id. The ALJ stated that Chilcote's testimony should be rejected in part because of the objective medical record was inconsistent with documented activities Chilcote

Page 11 – REPORT AND RECOMMENDATION

participated in and the objective medical record documenting greater functioning that Chilcote alleged. Tr. 23, 26.

Here, the court finds that the ALJ provided legally sufficient reasons to support his credibility finding. First, the ALJ gave sufficient specific reasons for not fully crediting Chilcote's testimony as to her pain. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (*citing* 20 C.F.R. § 404.1529(c)(2)). In this case, the ALJ properly noted that Chilcote often complained of pain, but did not appear in distress. Tr. 25. For example, the ALJ references Dr. Rao's physical evaluation of Chilcote on June 5, 2006. Id. During the evaluation, Chilcote stated that she was in great pain and "can't function and can't move," but Dr. Rao noted that Chilcote had a normal gait, "is able to get on and off the exam table and take off her shoes without any difficulty," and stated that the number of hours Chilcote could stand and walk in an eight-hour day would not be restricted. Tr. 572. The ALJ also mentions Chilcote's psychological consultative evaluation with John T. Adler, PhD, on June 2, 2006, where Dr. Adler observed that "[t]hough [Chilcote] reported that she was in pain during the office apt, this was not obvious (did not look in significant discomfort)." Tr. 25, 567.

The ALJ also pointed out that Chilcote's claims about the severity of her pain was undermined by her own testimony about her daily activities. For example, Chilcote testified that her daily pain is between a seven and eight on a ten-point scale, and that she could stand for no more than five minutes at a time. Tr. 78-79. However, she stated in her 2007 function report that she visits with friends, goes to the store, and sews and does crafts. Tr. 318. Daily activities

Page 12 – REPORT AND RECOMMENDATION

inconsistent with symptoms, including those of debilitating fibromyalgia, are a relevant credulity consideration. Rollins, 261 F.3d at 857.

Because the ALJ provided several and convincing reason to reject Chilcote's credibility, the court need not discuss the other reasons provided. Caldwell v. Astrue, 804 F.Supp.2d 1098, 1104 (D. Or. April 7, 2011). Substantial evidence supports the ALJ's credibility finding, and the ALJ's determination as to this issue should be affirmed.

## IV. Ivan Chilcote's Credibility

Chilcote alleges that the ALJ did not provide the proper legal basis in finding her husband not fully credible. ALJ must consider the statements of non-medical sources who are in a position to observe a claimant's symptoms and daily activities. Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However, the ALJ need not cite to the specific record as long as arguably germane reasons for dismissing the testimony are noted. Apfel, 236 F.3d at 512. An ALJ may reject lay witness testimony for being internally inconsistent or referencing activities of daily living inconsistent with an allegation of disability. Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009); Smolen v. Chater, 80 F.3d at 1284).

In assessing credibility in this case, the ALJ found Ivan Chilcote to be a credible source overall, but rejected his statements because they were "some estimates of functioning made by Mr. Chilcote which were inconsistent with the majority of his reporting." Tr. 19. Ivan Chilcote stated that his wife is unable to lift items over five pounds, has a weak hand grasp, and cannot

walk more than ten steps without becoming tired. Tr. 295, 333. However, as the ALJ noted, Ivan Chilcote also stated that she did her own laundry laundry, prepared meals, performed light housecleaning, shopped independently and with assistance, and is a person who "is always doing something." Tr. 19, 290-292, 294. When two reasonable interpretations of evidence arise, the court must affirm the ALJ's interpretation. Rollins, 261 F.3d at 857. Here, the ALJ's finding that Ivan Chilcote's description of his wife's level of functioning was in part inconsistent with his reporting of her daily activities. Accordingly, the ALJ's finding regarding Ivan Chilcote's testimony on this matter is affirmed.

## RECOMMENDATION

For the reasons stated above, the court recommends that the Commissioner's decision be reversed and the case remanded for further proceedings consistent with the instructions herein.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. Objections to this Report and Recommendation, if any, are due fourteen (14) days from today's date. If objections are filed, any response to the objections is due fourteen (14) days from the date of the objections. See FED. R. CIV. P. 72, 6.

DATED this 8 day of APRIL, 2013.

MARK D. CLARKE
United States Magistrate Judge